IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **FELISHA CARTER,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | **CIVIL ACTION NO.:** |
| v. ) | |
| ) | |
| **HARVARD MAINTENANCE,** ) | **JURY DEMAND** |
| **INC.,** ) | |
| ) | |
| **DEFENDANT.** ) | |
| ) | |

**COMPLAINT**

**I. JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(4), 2201 and 2202. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 2000(e), *et seq*. (hereinafter "Title VII"), 42 U.S.C. § 1981a and 42 U.S.C.§ 1981. The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured by Title VII and 42 U.S.C.§ 1981, providing for injunctive and other relief against race discrimination and retaliation.

2. Plaintiff has fulfilled all conditions precedent to the institution of this action

under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e et seq. Plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act. Plaintiff timely filed her lawsuit within 90 days of the receipt of her Right-to-Sue letter from the EEOC.

3. Venue is proper in the Middle District of Tennessee Nashville Division under 28 U.S.C. §1391(b), and pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f).

## II. PARTIES

4. Plaintiff, Felisha Carter ("Plaintiff") is a citizen of the United States, and a resident of the State of Tennessee

5. Defendant, Harvard Maintenance, Inc. ("Defendant" or "Harvard") is an entity subject to suit under Title VII and 42 U.S.C. § 1981.

## III. FACTS

6. Plaintiff is an African American female who began working at Defendant on or around July 6, 2020 as a Site Supervisor at the Didds location where she oversaw the cleaning of multiple buildings.

7. Plaintiff had two employees reporting to her and she reported to Senior Regional Operations Manager John Agee.

8. Plaintiff began to experience racial discrimination and harassment at work. For example, a white supervisor referred to black employees with the "n" word and when Plaintiff complained to Operations Manager Agee, he refused to do anything about it.

9. Also, the clients Plaintiff serviced made racial comments to Plaintiff, called her a "dirty black toilet," and placed a "let's go Brandon" mannequin wearing a Make America Great Again hat in the only entrance, but when Plaintiff complained to Operations Manager Agee he told Plaintiff to stop complaining.

10. Despite this discrimination and harassment, Plaintiff performed her job well, and in June 2021 Operations Manager Agee told Plaintiff they had gotten a new contract, offering her a promotion from her Supervisor position to a Manager position where she would supervise a third employee. Plaintiff accepted the promotion.

11. Operations Manager Agee subsequently told Plaintiff that he was not going to promote her, that she would not get the pay increase and she would not get the third employee, but she would still have to take on the additional duties that came with the new contract.

12. Plaintiff asked Operations Manager Agee why he took away her promotion, and he told her it was not in his budget.

13. Instead of promoting Plaintiff, Operations Manager Agee hired a subcontractor at even greater expense to Defendant to handle some of those manager duties.

14. On July 20, 2021, Plaintiff resigned her position, because Operations Manager Agee had taken away her promotion for alleged budgetary reasons while spending even more money on a subcontractor employee.

15. Operations Manager Agee then called Plaintiff and asked her to return to work, promising her a pay increase, a third employee, and additional equipment for her job including a golf cart, vacuum cleaners, and a washer and dryer.

16. Plaintiff returned to work on August 2, 2021, but Operations Manager Agee failed to provide Plaintiff with what he had promised her to return to work.

17. When Plaintiff returned to work, the clients who were harassing her and who she had complained to Operations Manager Agee about began to intentionally soil the areas she was supposed to clean with bodily fluids and defecation, and they told Operations Manager Agee they needed Plaintiff to clean disgusting unused bathrooms in the basement.

18. The clients also placed offensive signs that stated things such as "Black Lives Don't Matter" and "Hoe Must Go," about which Plaintiff complained to Operations Manager Agee, but Agee told Plaintiff to stop complaining.

19. Also, the clients left a loaded gun out in the area Plaintiff was responsible for

4

cleaning.

20. Plaintiff again complained to Operations Manager Agee about the loaded gun and told him that she feared for her safety, but told her to take one for the team and stop complaining.

21. Around December 2021, Operations Manager Agee began filling supervisor and management positions with white people, including employees named Lisa and Stacy, and Plaintiff never had an opportunity to apply for those jobs because Agee did not post them.

22. Operations Manager Agee began referring to Plaintiff as "bitch" and generally referred to her and other black employees as "you people," requiring her to work alone and to notify him when she went on break, left for lunch, and returned from lunch.

23. Also around that time, in early 2022, Plaintiff's white coworkers received a $3.00 per hour raise while Plaintiff only received a .48 cent raise.

24. Plaintiff complained about this racial discrimination and harassment in December of 2021 to a woman in Human Resources named Jennifer Martin, but matters only grew worse.

25. In January 2022, Operations Manager Agee sent out a text announcing that a white woman named Julia Ferguson was the new Operations Manager.

Plaintiff would have applied for that job but it was not posted, meaning she never had an opportunity to apply.

26. In February 2022, Operations Manager Agee promoted a white man named Joshua Alexander to Area Manager, and Plaintiff never had an opportunity to apply for that job because it was not posted.

27. Also, outside of Plaintiff's presence, Operations Manager Agee referred to Plaintiff and other black people as "niggers" and Defendant was made aware of this fact.

28. Ferguson, the white employee whom Operations Manager Agee had just hired, began picking at Plaintiff and taking away the tools she needed to do her job, such as clean mops, clean rags, a vacuum cleaner, and proper masks, despite requiring Plaintiff to clean mold and mildew in a building with asbestos.

29. Plaintiff's complaints about this harassment were ignored or only met with additional hostile treatment; therefore, Plaintiff could no longer tolerate the racial harassment and discrimination and was constructively discharged on March 28, 2022.

30. On April 11, 2022 Plaintiff filed an EEOC Charge.

31. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally

6

protected rights.

32. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, liquidated, compensatory and punitive damages is her only means of securing adequate relief.

33. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## IV. CAUSES OF ACTION

### Count I – Race Discrimination under Title VII and Section 1981

34. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. as amended, and 42 U.S.C. Section 1981a, and 42 U.S.C. Section 1981.

35. During her employment, Defendant discriminated against Plaintiff because of her African American race by taking adverse employment actions up to and including denying her promotions, paying her lower wages than her white co-workers and constructively discharging her employment.

36. Defendant's articulated reasons for these adverse employment actions, up to and including termination, are not legitimate.

37. Plaintiff may prevail under either a "pretext" theory or under a mixed-motive

7

theory, as even if Defendant had legitimate reasons for terminating Plaintiff's employment, Plaintiff's race was at least a motivating factor in the adverse employment actions Defendant took against her.

38. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

39. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

40. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**Count II – Race Harassment under Title VII and Section 1981**

41. Defendant subjected Plaintiff to a racially hostile work environment that was sufficiently severe or pervasive to alter the terms and conditions of her employment.

42. The hostile work environment was objectively and subjectively hostile and abusive because a reasonable person would find the work environment endured by Plaintiff hostile and abusive, Plaintiff perceived the environment to be hostile and abusive and the harassment negatively impacted Plaintiff's

8

employment by making it more difficult to do her job.

43. Plaintiff subjectively perceived the race/national origin harassing treatment she endured to be hostile and abusive, and such conduct actually negatively impacted the conditions of her employment.

44. Defendant failed to guard against the misconduct of its employees, failed to train its managers and employees, failed to monitor their performance and conduct and failed to take adequate remedial action.

45. Defendant had no effective national origin harassment policies and no effective procedures for handling complaints of national origin harassment.

46. Defendant was made aware of this hostile and abusive environment, and continuously refused to take appropriate remedial action.

47. Defendant ratified and/or condoned such hostile and abusive behavior by failing to take appropriate action and by terminating Plaintiff's employment.

48. Defendant is directly and vicariously liable for the conduct of its managerial employee that amounted to the race/national origin harassment suffered by Plaintiff.

49. The racially harassing conduct towards Plaintiff, and Defendant's ratification of such conduct, adversely affected Plaintiff's job because the conduct unreasonably interfered with Plaintiff's employment to such an extent that it

made it more difficult for Plaintiff to do her job and cumulated with the termination of her employment ending.

50. Defendant, by and through its agent, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

51. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

52. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**Count III – Retaliation in Violation of Title VII and Section 1981**

53. Plaintiff re-alleges and incorporates by reference the above factual paragraphs with the same force and effect as if fully set out in specific detail below.

54. Plaintiff engaged in protected activity when she complained of discrimination.

55. After Plaintiff filed an EEOC Charge, instead of remedying the discrimination and harassment Defendant retaliated against Plaintiff by taking materially adverse employment actions up to and including terminating her employment.

56. But for Plaintiff's engagement in protected activity, Defendant would not have

taken these materially adverse employment actions against her.

57. Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

58. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, compensatory, and punitive damages is her only means of securing adequate relief.

59. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**Count IV – Retaliatory Hostile Work Environment Under Title VII and Section 1981**

60. Plaintiff brings this Count pursuant to Title VII and Section 1981.

61. Plaintiff engaged in protected activity when she complained of discrimination.

62. After and because of Plaintiff's engagement in protected activity, she experienced a retaliatory hostile work environment.

63. Defendant failed to guard against the misconduct of its employees, failed to train their managers and employees, failed to monitor their performance and conduct and failed to take adequate remedial action.

64. Defendant had no effective policies and no effective procedures for handling

11

complaints of retaliatory harassment.

65. Defendant was made aware of this hostile and abusive environment, and continuously refused to take appropriate remedial action.

66. Defendant ratified and/or condoned such hostile and abusive behavior by failing to take appropriate action.

67. Defendant is directly and vicariously liable for the conduct of its employees that amounted to the retaliatory harassment suffered by Plaintiff.

68. The retaliatory harassing conduct towards Plaintiff, and Defendant's ratification of such conduct, adversely affected Plaintiff's job because the conduct unreasonably interfered with Plaintiff's employment to such an extent that it made it more difficult for Plaintiff to do his job.

69. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

70. After Plaintiff complained of discrimination and filed EEOC Charges, instead of remedying the harassment Defendant retaliated against Plaintiff by taking materially adverse employment actions up to and including continuing to refuse to accommodate him and harass him thus subjecting him to a retaliatory hostile work environment.

71. The retaliatory harassment would have dissuaded a reasonable worker from filing a charge of discrimination.

72. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief and compensatory damages is his only means of securing adequate relief.

73. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq., and 42 USC § 1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of

Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq, and 42 USC § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement in the position and salary level she would have occupied absent discrimination, backpay, front pay if reinstatement is not possible, lost wages (plus interest), medical expenses, compensatory and punitive damages, post judgment interest, loss of benefits including retirement, pension, seniority and other benefits of employment.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

## Jury Demand

**Plaintiff Demands a Trial by Struck Jury**.

Respectfully submitted,

/s/ Daniel Arciniegas
Arciniegas Law
1242 Old Hillsboro Road
The Atrium Building
Franklin, TN 37069
629-777-5339

Jon C. Goldfarb (pro hac vice admission pending)
L. William Smith (pro hac vice admission pending)

WIGGINS, CHILDS, PANTAZIS, FISHER, & GOLDFARB LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

Counsel for Plaintiff